JAY I. NUÑEZ, ESQ. (SB#248718)
NELSON & NUÑEZ, P.C.
1500 QUAIL, SUITE #260
NEWPORT BEACH, CA 92660
(949) 833-2616
thenunezfirm@gmail.com

Attorneys for PLAINTIFF,
VVP ADVISORS, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VVP Advisors, Inc.<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Kathy Baran, in her capacity as Director of California Service Center of U.S.C.I.S., and L. Francis Cissna, in his capacity as Director of U.S.C.I.S., and U.S.C.I.S.<br><br>　　　　Defendants. | Case No.: 8:19-cv-919<br><br>COMPLAINT FOR DECLARATORY RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATTIVE PROCEDURE ACT |

## INTRODUCTION

1. PLAINTIFF VVP Advisors Inc. (VVP Advisors) challenges the Defendants' arbitrary and unlawful decision to deny an "H-1B" nonimmigrant petition (hereafter "H-1B petition"), that it filed on behalf of Dr. Xinhong Lim so that it could employ him as a biotechnical investment analyst. VVP Advisors is a Delaware Corporation, and the U.S. subsidiary of Vickers Venture Partners – a venture capital firm based in Singapore. Vickers Venture Partners was founded in 2005 and currently manages $2.5 billion. VVP Advisors was incorporated in 2016.

1

2.     The H-1B visa classification allows highly skilled and educated foreign workers to work for U.S. employers in "specialty occupations"—that is, positions requiring the theoretical and practical application of a body of highly specialized knowledge, for which a bachelor's or higher degree in a specific specialty is required.

3.     The position for which VVP Advisors filed the H-1B petition, Biotechnical Investment Analyst, is a Level IV position (the highest classification given by Department of Labor), which, by definition, requires full competency, judgment and independent evaluation, and the use of advanced skills and diversified knowledge to solve unusual and complex problems. The prevailing wage for the position is $111,093/year; however, VVP Advisors' offered salary was $250,000/year. The biotechnical investment analyst's job duties include:

- Identification and detailed scientific evaluation of investment opportunities in biotech, pharmaceutical and healthcare. 30% of time.
- Ongoing support of biotech portfolio companies. 30% of time.
- Negotiation of terms for new investments and exits from current portfolio companies. 15% of time.
- Raising money for VVP Advisors and portfolio companies by meeting with potential investors. 10% of time.
- Managing projects and teams. 10% of time.
- Formulation of investment strategy in biotech, pharmaceutical and healthcare companies. 5% of time.

4.     In support of its petition, VVP Advisors submitted a detailed job description of the biotechnical investment analyst position including the specific job duties and percentage of time to be spent on each. VVP Advisors provided evidence that Dr. Lim attained the requisite education to perform the job duties as a biotechnical investment analyst.

5.     In denying Plaintiff's H-1B petition, Defendants mischaracterized VVP

Advisors' detailed job description and the in depth explanation on why this position requires a strong scientific education to perform the job duties. Defendants disregarded the evidence when they concluded that the biotechnical investment analyst position was more properly categorized as a computer systems analyst or financial analyst, and that Dr. Lim did not have the educational background required to be classified as either of these job titles.

6. Defendants acted in an arbitrary and capricious manner and contrary to law in denying VVP Advisors' H-1B petition. As such, the Court should vacate the denial and approve the H-1B petition.

## JURISDICTION

7. This case arises under the INA, 8 U.S.C. §1101 *et seq.* and the Administrative Procedure Act (APA), 5 U.S.C. §701 *et seq.* This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction). This Court also has authority to grant declaratory relief under 28 U.S.C. §§2201-02, and relief under the APA. There exists between the parties an actual and justiciable controversy over which Plaintiff seeks declaratory relief to protect its legal rights. The United States has waived its sovereign immunity under 5 U.S.C §702.

## VENUE

8. Venue in this judicial district is proper under 28 U.S.C. §1391(e)(1)(A), because this is a civil action in which the Defendants, respectively, are an agency of the United States and officers of the United States acting in their official capacity, and the office (California Service Center) that issued the decision on the H-1B petition is located in this District.

## EXHAUSTION OF REMEDIES

9. Defendant U.S. Citizenship and Immigration Services' (USCIS) March 12, 2019 denial of Plaintiff VVP Advisors' H-1B petition constitutes final agency action under the APA. See 5 U.S.C. §§551(13); 701(b)(2); 704. Neither the INA

3

nor implementing regulations at 8 C.F.R. § 103.3(a) require an administrative appeal of the denial. Accordingly, Plaintiff has no administrative remedies to exhaust.

## PARTIES

10. Plaintiff VVP Advisors is the U.S. subsidiary of Vickers Venture Partners. VVP Advisors was incorporated in 2016 in Delaware. Founded in 2005, Vickers Venture Partners is based in Singapore. Vickers Venture Partners' portfolio focuses on life sciences, biotechnology, nanotechnology, and artificial intelligence among other areas.

11. Defendant USCIS is a component of the Department of Homeland Security, 6 U.S.C. §271, and an "agency" within the meaning of the APA, 5 U.S.C. §551(1). USCIS is responsible for the adjudication of immigration benefits, including nonimmigrant petitions. USCIS denied the H-1B petition at issue here.

12. Defendant Kathy Baran is the Director of California Service Center of USCIS. In this role, she oversees and manages the adjudication and processing of petitions and applications. California Service Center issued the decision on Plaintiff VVP Advisors' H-1B petition and she is sued in her official capacity.

13. Defendant L. Francis Cissna is the Director of USCIS. In this role, he oversees the adjudication of immigration benefits, and establishes and implements governing policies. He has ultimate responsibility for the adjudication of Plaintiff VVP Advisors' H-1B petition and is sued in his official capacity.

## LEGAL BACKGROUND

### *H-1B Petition Process*

14. Section 101(a)(15)(H)(i)(b) of the INA provides for the admission into the United States of temporary workers sought by petitioning U.S. employers to perform services in a specialty occupation. 8 U.S.C. §1101(a)(15)(H)(i)(b). This nonimmigrant classification is commonly referred to as "H-1B."

15. A "specialty occupation" is one that requires the "(A) theoretical and

practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. §1184(i).

16. The H-1B classification has several prerequisites a U.S. employer must meet before filing a nonimmigrant visa petition with USCIS. One of relevance is the statutory requirement that the employer file a Labor Condition Application (LCA) for certification by the U.S. Department of Labor (DOL). 8 U.S.C. §1182(n)(1). The employer makes certain attestations in the LCA which are intended to ensure that the employment of an H-1B worker will not have an adverse effect on the wages and working conditions of similarly-situated U.S. workers. See 8 U.S.C. §§1182(n)(1)(A)-(D).

17. To demonstrate to DOL that it will pay the higher of the prevailing wage or actual wage (the required wage) for its job, the employer may obtain a prevailing wage from a DOL online wage library, using a Standard Occupational Classification (SOC) for the job, the job location and one of four wage levels (Level I being entry level and Level IV being fully competent) depending on the employer's education and experience requirements. At the time VVP Advisors filed the LCA, the instructions directed it to enter the six or eight-digit SOC code for the occupation which most clearly describes the work to be performed. The Department of Labor SOC categories are an incomplete list of actual jobs in the American economy, and, because it takes the federal government several years to issue updates, many newer job titles are not represented.[1] For this reason, there are many catch-all categories. The "All Other" classifications under the SOC have traditionally been reserved for emerging occupations where Bureau of Labor

---

[1] For example, the SOC update for 2018 was recently published, a process that took over four years to complete and relied upon proposals made in 2014. *See* 82 Fed. Reg. 56271 (Nov. 28, 2017).

Statistics and the Census Bureau have difficulty obtaining sufficient data to treat the particular occupation as its own SOC category. For VVP Advisors, the closest SOC to its Biotechnical Investment Analyst job is 19-1029, Biological Scientists, All Other. Dr. Lim's job duties were primarily science-based; however, none of the specific scientist positions accurately described the biotechnical investment analyst. For this reason, VVP Advisors classified the position under the SOC for Biological Scientiest, All Other.

18. When the U.S. employer files the H-1B nonimmigrant petition on the foreign national's behalf with USCIS, the employer must include the DOL-certified LCA.

*H-1B Lottery*

19. Congress established a "cap" of 65,000 regular H-1B visa numbers per fiscal year. *See* 8 U.S.C. §1184(g)(1). An additional 20,000 H-1B visa numbers are available each fiscal year without regard to the regular 65,000 "cap" if the beneficiary has a master's or higher degree from a U.S. university. See 8 U.S.C. §1184(g)(5)(C). USCIS has characterized the 20,000 additional visa numbers as the H-1B "master's exemption."

20. A U.S. employer whose petition is subject to the annual "cap" may file on the first business day of April for employment that begins on October 1st of that year (the first day of the next fiscal year). If USCIS determines that it has received more than enough petitions to meet the H-1B numerical limits at any time within the first five business days of the filing period, it uses a computer-generated random selection process (lottery) to select H-1B petitions for adjudication from the petitions received during that time period.

*H-1B Requirements*

21. For an H-1B classification, USCIS determines whether the petitioning employer's job qualifies as a specialty occupation and whether the beneficiary is qualified to perform the job duties required by the specialty occupation. *See* 8

1  C.F.R. §§214.2(h)(4)(i)(A)(1), (h)(4)(iii)(B)(3).

22. The agency regulation provides:

   (A)   Standards for specialty occupation position. To qualify as a specialty occupation, the position must meet one of the following criteria:

      (1)   A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

      (2)   The degree requirement is common to the industry in parallel positions among similar organization, or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

      (3)   The employer normally requires a degree or its equivalent for the position; or

      (4)   The nature of the specific duties are [*sic*] so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. §214.2(h)(4)(iii)(A)(1)-(4).

## FACTUAL ALLEGATIONS

23. Vickers Venture Partners is a multi-billion dollar venture capital firm founded in 2005 in Singapore. Plaintiff VVP Advisors, Inc. is the US subsidiary created in order to abide by U.S. employment and tax laws and to enhance the organization's ability to invest in U.S.-based companies. In order to invest in U.S. companies, Vickers Venture Partners needed analysts in the United States who could locate potential investment targets, assess the targets' potential success and, after investing, work closely with the target to help make the company profitable. Vickers Venture Partners manages $2.5 billion and focuses on artificial intelligence and big data, life sciences and biotech, pharmaceuticals, and clean

technology among other industries. As a general rule when Vickers Venture Partners decides to invest in a start-up company, the fund will invest between $1 million and $12 million. When assessing which potential start-ups are the most promising, Vickers Venture Partners relies on its analysts who have extremely specialized knowledge in their given fields and thoroughly understand their given industry. This is common in the venture capital industry. To expect an investment fund to risk millions of dollars on the opinion of an analyst with less than a bachelor's degree and who does not have specialized knowledge of the subject matter makes little sense.

### *Dr. Lim's Employment with Vickers Venture Partners and VVP Advisors*

24. Dr. Xinhong Lim obtained his Bachelor's in Science Degree in Natural Science-Biochemistry from University of Wisconsin-Madison in 2006 and his PhD in Developmental Biology from Stanford University in 2013. Dr. Lim began working for Vickers Venture Partners in Singapore in 2015 as a biotechnical investment analyst and venture principal.

25. In an attempt to expand Vickers Venture Partners' investment portfolio in U.S.-based companies, VVP Advisors was incorporated in Delaware in 2016. VVP Advisors opened offices in New York and San Francisco.

26. Due to USCIS delays in processing Dr. Lim's H-1B petition, VVP Advisors applied for an H1B1 visa at the Singapore consulate. It was approved in November 2018, and Dr. Lim is currently working as an H1B1 biotechnical investment analyst for VVP Advisors. The standard for the H1B1 and the H-1B are identical; however, the H1B1 is less desirable because it can only be granted in one year increments and it does not allow for immigrant intent.

### *VVP Advisors' H-1B Petition*

27. In April 2018, VVP Advisors properly submitted its H-1B petition for consideration as a "master's exemption" petition. VVP Advisors filed the H-1B petition because it intended to invest tens of millions of dollars in US-based start-

up companies focused on life sciences, biotechnical, and pharmaceuticals, and, with many of those companies based in Northern California, Plaintiff wanted one of its primary biotechnical investment analysts to be working in the geographical area where many of their investment targets were located.

28. Included with its H-1B petition, VVP Advisors provided an employer letter detailing the six primary job duties of a biotechnical investment analyst including percentage of time spent on each duty:

1) **Formulation of Investment Strategy**: Dr. Lim will undertake a process similar to his PhD training by synthesizing strategic, financial and technical information from a broad variety of sources to propose specific investment hypotheses. Dr. Lim's deep technical knowledge equips him to navigate several complex domains. Dr. Lim will work with the Partners to articulate and refine these hypotheses, then propose investments that test the hypothesis. ***Dr. Lim will spend approximately 5% of the time on this duty.***

2) **Identification and detailed evaluation of investment opportunities:** VVP has decided that a key part of the investment strategy is to invest in United States Deep Tech companies. In order to source new investment opportunities that are consistent with the investment strategy, Dr. Lim needs to be located in a major U.S. Tech hub like Silicon Valley in California. Since Dr. Lim obtained his PhD at Stanford University, he has relationships with top innovators and funders in the area. Dr. Lim's extensive networks with the top United States and Asian academic center developed from his academic and industry work gives him access to technology at the earliest stages and helps him identify and recruit the top subject matter experts and entrepreneurs to help with strategy formulation and technology commercialization. Dr. Lim will attend Demo Days, company showcases, and investor conferences.

After identifying promising companies to invest in, Dr. Lim will spend time

conducting research and due diligence to validate the investment hypothesis and determine potential financial return. The evaluation of a new investment integrates the assessment of each of the various elements of risk associated with a company's business plan, including a detailed analysis of the tech and science, company's product development and financing plans, commercial opportunity, intellectual property, and competitive landscape. To effectively perform this multi-faceted assessment, Dr. Lim uses all the training obtained from his PhD, drug development and business courses. If Dr. Lim determines that the company presents an attractive investment opportunity, he will prepare a company specific and thematic research report that he will present to the Investment Committee. ***Dr. Lim will spend approximately 30% of the time on this duty.***

3) **Negotiation of terms for a new investment and exits:** When the Partners vote to invest in a company, Dr. Lim will work with the Partners and legal Counsel to prepare a term sheet that will specify the terms for investment in the company. Dr. Lim will seek to balance the interests of the investors with the company to find a win-win situation. ***Dr. Lim will spend approximately 15% of the time on this duty.***

4) **Ongoing support of portfolio companies:** Following the completion of the investment, Dr. Lim will support the key Biotech portfolio companies based in the United States, such as Samumed and Sisaf. Samumed is developing drugs that modulate the Wnt signaling pathway for a variety of different diseases, and Dr. Lim's expertise in Wnt signaling gained from his PhD and subsequent research work make him uniquely qualified to understand Samumed's science and support commercialization activities. Sisaf plans to use its propriety drug delivery platform to formulate and develop new products for skin care and disease treatments. Dr. Lim's expertise in skin biology and drug development enable him to authoritatively advise and

1  support Sisaf's commercial efforts. ***Dr. Lim will spend approximately 30% of the time on this duty.***

5) **Raising money for VVP Advisors and portfolio companies:** Dr. Lim will work with the Operating MDs to help raise fund for VVP to invest, as well as raise co-investments for portfolio companies to accelerate their growth. Dr. Lim will leverage his scientific and applied business training to understand the technology/science/product and synthesize it with other criteria to make a compelling pitch to other investors. ***Dr. Lim will spend approximately 10% of the time on this duty.***

6) **Managing projects and teams:** Since this job involves a substantial amount of project and people management, Dr. Lim will utilize the management skills honed during his PhD and subsequent work leading and managing a large lab with international collaborators in academia and industry. ***Dr. Lim will spend approximately 10% of the time on this duty.***

**(Exhibit 1 at Pages 19-20)**

29. Pursuant to its lottery, USCIS randomly selected VVP Advisors' petition and, on or about April 20, 2018, accepted VVP Advisors' H-1B petition for filing.

*USCIS Issues Request for Evidence*

30. On July 18, 2018, USCIS issued a Request for Evidence (RFE) stating that VVP Advisors' biotechnical investment analyst position had not been proven to be a specialty occupation. The RFE requested a more detailed statement of Dr. Lim's duties and responsibilities among other things. The RFE also requested examples of Dr. Lim's work product.

31. In response, VVP Advisors provided over 300 pages of evidence including work product created by Dr. Lim that exemplify his job duties. They provided a due diligence report for Sisaf, Ltd. in which Dr. Lim evaluated the current state of one of the organization's portfolio companies. (Job Duty #4.) VVP Advisors also included a thirteen page evaluation of a potential investment target authored by Dr.

1  Lim regarding the company Atomwise, Inc. (Job Duty #2.) Finally, they provided a
2  sample term sheet for a potential investment opportunity. (Job Duty #3)
3  32.    VVP Advisors provided an even more in-depth explanation regarding the
4  same six job duties; this time explaining which computer programs, software and
5  applications Dr. Lim uses to perform each job duty and further detailing his
6  process to accomplish each duty. The same exact six job duties were identified
7  here as were identified in the initial employer letter. The only difference was the
8  level of detail provided in response to the RFE. **(Exhibit 2 at Pages 22-25)**

*USCIS' Denial of the H-1B Petition*

10  33.    On March 12, 2019, USCIS issued a denial of the H-1B petition that
11  contained numerous errors, misstatements and a fundamental lack of attention to
12  detail. The denial claimed that the position was for a biological scientist and failed
13  to recognize that while the SOC code was for a Biological Scientist, All Other, the
14  job title was Biotechnical Investment Analyst. USCIS's denial disregarded the
15  evidence when it concluded that the job duties identified in the initial H-1B filing
16  differed from the job duties that were stated in the RFE response. In the denial,
17  USCIS completely mischaracterized the evidence when it stated that VVP
18  Advisors identified four job duties in the initial filing:

   1) Negotiate international investments with particular focus on the Biotechnology, Medical, and Educational Technology sectors;
   2) Support key Biotech portfolio companies that develop drugs that modulate the Wnt signaling pathway for a variety of different diseases;
   3) Use propriety drug delivery platform to formulate and develop new products for skin care and disease treatments;
   4) Work with Operating MDs to help raise fund for VVP to invest.

**(Exhibit 3 at Page 29)**

27  34.    The denial failed to acknowledge that VVP Advisors stated the same six job
28  duties in both the initial filing and the RFE response. USCIS cherry-picked from

the expanded explanation of the job duties and claimed that the response to the RFE added new job duties that were never mentioned in the initial filing. USCIS concluded that the new job duties described a computer systems analyst or financial analyst by ignoring the substantial explanation of how Dr. Lim's science-based education is specifically required to perform the job of biotechnical investment analyst.

35.  USCIS created an alternate universe by introducing job requirements that were not part of the record and Dr. Lim could not meet based on his educational background. By mischaracterizing the evidence, USCIS concluded that the biotechnical investment analyst is better classified under the SOC code for a computer systems analyst or financial analyst. Then, USCIS concluded that Dr. Lim was not qualified to perform either as a computer systems analyst or a financial analyst because he does not have the educational background to prepare him for either position.

***Dr. Lim's Biotechnical Investment Analyst position is so complex or unique that it can be performed only by an individual with a degree***

36.  In order to qualify as a specialty occupation, VVP Advisors must show that the position requires the theoretical and practical application of a body of highly specialized knowledge and that requires the attainment of a bachelor's degree or higher in a specific specialty. 8 U.S.C. §1184(i). As stated earlier in paragraph 21, the federal regulations require that VVP Advisors show that the position meets one of the four prongs in order to prove specialty occupation. 8 C.F.R. §214.2(h)(4)(iii)(A)(1)-(4). Here, the biotechnical investment analyst position meets the second prong because the position is so complex and unique that it can only be performed by an individual with a science degree. The job duties described in both the initial filing and the response to the RFE clearly evince the requirement that a biotechnical investment analyst must have at least a bachelor's degree in science. Plaintiff is deciding whether to invest millions of dollars in life science,

biotech and pharmaceutical companies based on the evaluations, reports and advice from Dr. Lim. Once Plaintiff decides to invest in a start-up company, they are entrusting Dr. Lim to help support the portfolio company and make it profitable. Without Dr. Lim's PhD level scientific education, he could not provide accurate assessments of which companies' science and technology are likely to succeed and become profitable. Neither a computer systems analyst nor a financial analyst can perform this type of work. VVP Advisors properly classified the job under the SOC code for Biological Scientist, All Others because the biotechnical investment analyst position is a newer, emerging occupation that has not yet been independently categorized by Bureau of Labor Statistics, and it is primarily a scientist position.

37.   Dr. Lim obtained a Bachelor's in Science Degree in Natural Science-Biochemistry and a PhD in Developmental Biology. This education has provided Dr. Lim with the highly specialized knowledge required to perform the biotechnical investment analyst position.

## COUNT ONE

**Violation of the Administrative Procedure Act, 5 U.S.C. § 701, et seq., the Immigration and Nationality Act and its Implementing Regulations**

38.   Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-37 above.

39.   Plaintiff is entitled to review by this Court pursuant to 5 U.S.C. §§701-706.

40.   A reviewing court shall "hold unlawful and set aside agency action . . . found to be – arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

41.   Defendants denied VVP Advisors' H-1B petition through mischaracterizing the evidence presented and concluding that Dr. Lim's biotechnical investment analyst position should have been classified as a computer systems analyst or financial analyst, and that Dr. Lim did not have the proper education to qualify for

either of those positions.

42. Plaintiff VVP Advisors submitted evidence demonstrating that the position satisfied the statutory definition of a specialty occupation, 8 U.S.C. §1184(i)(1)(A)-(B).

43. Plaintiff VVP Advisors submitted over 300 pages of evidence demonstrating that the biotechnical investment analyst position satisfied the second prong of the regulatory criteria of specialty occupation by proving that the biotechnical investment analyst position is so complex or unique that it can be performed only by an individual with a degree. 8 C.F.R. §214.2(h)(4)(iii)(A)(2).

44. Defendants failed to properly consider all record evidence; reached factual conclusions as to the biotechnical investment analyst position unsupported by any evidence in the record; mischaracterized the evidence when applying the applicable regulations; impermissibly imposed evidentiary requirements beyond those required by Congress; and, erroneously concluded that the biotechnical investment analyst position for VVP Advisors did not constitute a specialty occupation under the INA and the corresponding regulations.

45. Defendants' errors, singly and in combination, were arbitrary, capricious and in violation of the law. Consequently, Defendants acted arbitrarily, capriciously, and contrary to the law in violation of the APA, the INA, and the immigration regulations by denying Plaintiff VVP Advisors' H-1B petition.

## REQUEST FOR RELIEF

WHEREFORE, PLAINTIFF prays that the Court grant the following relief:

1. Declare that Defendants' determination that evidence submitted by Plaintiff VVP Advisors was insufficient to establish that the Biotechnical Investment Analyst position is a specialty occupation was arbitrary and capricious, and not in accordance with law, in violation of the APA, 5 U.S.C. §706(2)(A), the INA and the regulations;

2. Vacate the denial of VVP Advisors' H-1B petition and remand this matter to Defendants with instructions that, within ten day of the date of the Court's Order, it: approve the Form I-129, Petition for Nonimmigrant Worker filed by Plaintiff VVP Advisors with validity through September 27, 2021.

3. Award Plaintiff its costs in this action; and

4. Grant such other relief as the Court deems just, equitable and proper.

5. For attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412.

DATED: May 15, 2019                NELSON & NUÑEZ, P.C,


by:_____
JAY I. NUÑEZ, Attorney for PLAINTIFF,
VVP Advisors, Inc.

## **INDEX OF EXHIBITS**

| | |
|---|---|
| EXHIBIT "1"<br>PAGES 18-20 | COPY OF VVP ADVISORS' INITIAL EMPLOYER LETTER SUBMITTED WITH THE H-1B PETITION IN APRIL 2018 |
| EXHIBIT "2"<br>PAGES 21-27 | COPY OF VVP ADVISORS' EMPLOYER LETTER SUBMITTED IN RESPONSE TO THE RFE IN OCTOBER 2018 |
| EXHIBIT "3"<br>PAGES 28-34 | COPY OF USCIS DENIAL DATED MARCH 12, 2019 |
| EXHIBIT "4"<br>PAGES 35-39 | COPY OF LABOR CONDITION APPLICATION (LCA) |