1  JAY I. NUÑEZ, ESQ. (SB#248718)
   NELSON & NUÑEZ, P.C.
2  1500 QUAIL, SUITE #260
   NEWPORT BEACH, CA 92660
3  (949) 833-2616
   thenunezfirm@gmail.com
4
   Attorneys for PLAINTIFF,
5  VVP ADVISORS, INC.

6

7              UNITED STATES DISTRICT COURT

8             CENTRAL DISTRICT OF CALIFORNIA

9  VVP Advisors, Inc.              )  Case No.:  SACV 19-919-AG- (KESx)
                                   )
10          Plaintiff,             )
                                   )
11                                 )  MEMORANDUM OF POINTS AND
                                   )  AUTHORITIES IN SUPPORT OF
12      vs.                        )  PLAINTIFF'S MOTION FOR
                                   )  SUMMARY JUDGEMENT
13  Kathy Baran, et al.            )  PURSUANT TO FED. R. CIV. P. 56
                                   )
14                                 )
            Defendants.            )
15                                 )
                                   )
16                                 )
                                   )
17                                 )  Hon. Andrew J. Guilford
                                   )
18                                 )
                                   )
19  _____)

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................1

II.  PARTIES AND H-1B LEGAL FRAMEWORK ..........................2

    A.  Plaintiff and Dr. Xinhong Lim...............................................2

    B.  The Government Defendants...................................................3

    C.  Legal Framework for Granting H-1B visas..............................3

III.  STATEMENT OF FACTS........................................................4

    A.  Plaintiff's file Form I-129 Seeking H-1B Status.........................4

    B.  Government issues a request for evidence and Plaintiff's response....6

    C.  Government denies the H-1B petition on superficial and unsupported grounds...................................................................9

IV.  ARGUMENT.........................................................................9

    A.  Combined Summary Judgement and APA Standard of Review........9

    B.  The Government erred as a matter of law when it failed to correctly apply a preponderance of the evidence standard.......................11

    C.  The Government's Repeated Cherry-Picking of Fragments of Sentences In Order To Mischaracterize the Job Duties of the Biotechnical Investment Analyst Position Was Arbitrary and Capricious.................................................................14

        i.  The Government Erred When It Ignored Joanna Goh's Overarching Job Description of the Biotechnical Investment Analyst Position.......................................................14

        ii.  The Government Erred When It Repeatedly Referred to the Position as a Biological Scientist And Never Once Acknowledged The Job Title As Biotechnical Investment Analyst................15

        iii.  The Government Erred When it Edited and Ignored VVPA's Job Duties As Stated in the Original Filing............................16

iv.  The Government Erred When It Edited and Manipulated VVPA's Stated Job Duties from Joanna Goh's Second Letter In Order to Conclude That VVPA Had Described a Financial Analyst or Computer Systems Analyst Rather than a Biotechnical Investment Analyst……………………………………………………………19

v.  The Government Erred When It Ignored Very Obvious   Science-Based Job Duties and Concluded that the Biotechnical Investment Analyst Position Was More Akin to a Financial Analyst or Computer Systems Analyst…………………………………………..21

D.    The Government's Failure to Consider All the Evidence and Manipulative Misrepresentation of The Job Duties Shows that Defendants "Offered an Explanation for Its Decision that Is Counter to the Evidence"……………………………………………………24

V.    CONCLUSION………………………………………………...……….25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Residential Finance Corp. v. U.S. Citizenship and Immigration Services*,

839 F.Supp.2d, 994-97 (2011) ……………………………………………………1

*N.C. Fisheries Ass'n v. Gutierrez,*

518 F.Supp.2d 62, 79 (D.D.C. 2007)……………………………………...……10

*Hospital of University of Pennsylvania v. Sebelius,*

847 F.Supp.2d 125, 133 (D.D.C. 2012)…………………………...……..……10

*Nw. Motorcycle Ass'n v. Dep't of Agriculture,*

18 F.3d 1468, 1471 (9th Cir. 1994)……………………………....10, 11, 13, 24

*Friends of Santa Clara River v. U.S. Army Corps of Engineers,*

887 F.3d 906, 920 (9th Cir. 2018)…………………………...……..10, 13, 24

*Occidental Eng'g Co. v. I.N.S. ,*

753 F.2d 766, 769 (9th Cir. 1985)……………………………….…..…..11, 24

*Innova Sols., Inc. v. Baran,*

338 F.Supp.3d 1009, 1016 (N.D. Cal. 2018)…………………………….…11

*Matter of Chawathe,*

25 I&N 369 (AAO 2010)…………………………………...……………..…12

*Matter of Pazandeh,*

19 I&N 884 (BIA 1989)…………………………………………………...…12

*Matter of Patel,*

18 I&N 774 (BIA 1988)……………………………………...……...…12

**Statutes**

5 U.S.C. § 556(d)…………………………………………………………..…12

5 U.S.C. §702………………………………………………………………...…1

5 U.S.C. § 706……………………………………………………………….9, 14

5 U.S.C. § 706(2)(A)...................................................................10

8 U.S.C. §1184(i)(1)....................................................................3

**Rules and Regulations**

Fed. R. Civ. P. 56 and L.R. 56-1........................................................1

Fed. R. Civ. P. 56(c)..............................................................9, 14

8 C.F.R. §214.2(h)(4)(iii)(A)........................................................4

# I.    INTRODUCTION

Plaintiff VVP Advisors, Inc. ("VVPA"), pursuant to Fed. R. Civ. P. 56 and L.R. 56-1, hereby move this Court for summary judgment in this Administrative Procedure Act case challenging the validity of the Government's March 12, 2019 final agency decision denying Dr. Xinhong Lim an H-1B visa to work as a Biotechnical Investment Analyst for VVPA. Plaintiff seeks declaratory judgment that the March 12, 2019 final agency action must be set aside and an order from this Court directing the Government to issue Dr. Lim an H-1B visa immediately.

This action seeks relief against Kathy A. Baran, Director of the California Service Center, U.S. Citizenship and Immigration Services ("USCIS"), U.S. Department of Homeland Security ("DHS"); Kenneth T. Cuccinelli, Acting Director, USCIS; Kevin McAleenan, Acting Secretary, DHS; USCIS; and DHS (collectively "the Government" or "Defendants") under the Administrative Procedure Act ("APA"), 5 U.S.C. §702, based on the Government's improper March 12, 2019 denial of Form I-129, otherwise known as an H-1B visa petition, filed by VVPA on behalf of Dr. Lim. The Government denied the H-1B petition on the sole ground that the Biotechnical Investment Analyst position, as described by VVPA, is better classified as a financial analyst or computer systems analyst rather than as a Biological Scientist, All Other classification. In light of the extensive evidence submitted by VVPA in support of the H-1B petition and the fundamentally flawed analysis in the Government's March 12, 2019 denial, the denial was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Plaintiff VVPA requests that the Court hold unlawful and set aside the March 12, 2019 denial of Dr. Lim's H-1B petition, order the Government to issue the "unlawfully withheld" H-1B visa immediately, and grant other appropriate declaratory and injunctive relief. *See Residential Finance Corp. v. U.S. Citizenship and Immigration Services*, 839 F.Supp.2d, 994-97 (S.D. Ohio 2011) ("Defendant failed to examine all of the correct relevant data and to

1

1  articulate an untainted, satisfactory explanation for the denial that rationally

2  connected the facts to the decision. The denial of the petition here was thus

3  arbitrary, capricious, and an abuse of discretion.")

4  II.    **PARTIES AND H-1B LEGAL FRAMEWORK**

5         **A.    Plaintiff and Dr. Xinhong Lim**

6         Plaintiff VVP Advisors, Inc. ("VVPA"), is a Delaware corporation with

7  offices in New York and San Francisco. (SF 1.) VVPA is wholly owned by

8  Vickers Venture Partners, a venture capital firm based in Singapore. (SF 1.) The

9  firm's portfolio encompasses life sciences, technology, media and

10 telecommunications as well as consumer and financial services. (SF 2.) The firm's

11 more recent focus has been on biotechnology, nanotechnology and artificial

12 intelligence with biotechnology being the best-performing sector in their portfolio.

13 (SF 3.) In order to tap into the large volume of deal flow in the Silicon Valley area,

14 VVPA has set up an office in San Francisco. (SF 2.)

15        Vickers Venture Partners' total fund size at the time of the original filing and

16 as stated in original filing was $363.5 million. (SF 4.)  FintechNews Malaysia

17 stated "Vickers Venture Partners recently raised South Asia's largest non-

18 government linked V.C. fund- a $230 million fund (fund V)." (SF 5.)  TODAY

19 online wrote "Vickers Venture Partners closed its fifth fund of $230 million in

20 October 2017.  They are looking to raise its largest fund $500 million later this

21 year as it seeks to increase investment in biotechnology, nanotechnology, and

22 artificial intelligence." (SF 6.)

23        Dr. Xinhong Lim obtained his Bachelor's in Science Degree in Natural

24 Science-Biochemistry from University of Wisconsin-Madison in 2006 and his PhD

25 in Developmental Biology from Stanford University in 2013. (SF 7.)  Dr. Lim

26 began working for Vickers Venture Partners in Singapore in 2015 as a biotechnical

27 investment analyst and venture principal. (SF 8.)  In an attempt to expand Vickers

28 Venture Partners' investment portfolio in U.S. based companies, VVPA was

2

1  incorporated in Delaware in 2016. (SF 1.)  VVPA opened offices in New York and
2  San Francisco. (SF 2.)  In April 2018, VVPA filed the H-1B petition at the heart of
3  this litigation. (SF 9.)  Due to USCIS delays in processing Dr. Lim's H-1B
4  petition, VVPA applied for an H1B1 visa at the Singapore consulate, and it was
5  approved in November 2018. (SF 10.) The standard for the H1B1 and the H-1B are
6  identical. (SF 11.) The H1B1 is essentially an H1B visa that is only available to
7  Singaporean and Chilean nationals. (SF 12.) The U.S. consulate in Singapore did
8  not hesitate to find that Dr. Lim's position as a biotechnical investment analyst
9  qualified as a specialty occupation under the H-1B/H1B1 standard. (SF 13.)
10  Although the H-1B and H1B1 standards for approval are identical, the H-1B is
11  more desirable because it can be granted in three year increments (versus one year
12  increments for the H1B1) and the H-1B allows the alien to pursue a permanent
13  residency due to the dual intent doctrine (the H1B1 does not allow for dual intent).
14  (SF 14.)

15  **B.     The Government Defendants**

16  The Defendants in this case, all government officials sued in their official
17  capacity or the federal agencies involved, are each responsible for the March 12,
18  2019 final agency decision denying an H-1B visa filed by VVPA on behalf of Dr.
19  Lim.

20  **C.     Legal Framework for Granting H-1B Visas**

21  An H-1B visa allows a foreign national to be admitted temporarily to the
22  United States to work in a "specialty occupation," which is defined as an
23  occupation that requires "theoretical and practical application of a body of highly
24  specialized knowledge" and "attainment of a bachelor's or higher degree in a
25  specific specialty (or its equivalent) as a minimum for entry into the occupation in
26  the United States." 8 U.S.C. §1184(i)(1).

27

28

Pursuant to regulations implementing the INA, a position must be found to meet one of the following four mutually independent criteria to qualify as an H-1B specialty occupation:

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. §214.2(h)(4)(iii)(A).

## III.  STATEMENT OF FACTS

### A.  Plaintiffs file form I-129 Petition Seeking H-1B Status

On April 2, 2018, VVP Advisors, Inc. ("VVPA") filed a Petition for Nonimmigrant Worker (Form I-129) on behalf of Dr. Xinhong Lim, a citizen of Singapore. (SF 15.) In support of its petition, VVPA supplied a Labor Condition Application ("LCA") certified by the U.S. Department of Labor for the position of Biotechnical Investment Analyst (SF 16.); copies of Dr. Lim's Bachelor's Degree in Natural Sciences-Biochemistry from University of Wisconsin-Madison and his PhD in Developmental Biology from Stanford University (SF 17.); background information on Vickers Venture Partners, the Singapore based parent company of VVPA, showing the overall fund size as $593.5 million (SF 18.); and a letter from Joanna Goh, the legal counsel and HR Director for VVPA. (SF 19.)

The Joanna Goh letter established that VVPA wished to offer Dr. Lim a position as a Biotechnical Investment Analyst. (SF 19.) She stated that Dr. Lim's

primary responsibility will be to "help source, evaluate, and negotiate international investments with a particular focus on the Biotechnology, educational, and medical Technology sectors." (SF 19.) She stated that his salary would be $250,000. She offered a detailed description of his six primary job duties:

(1) Formulation of Investment Strategy (5% of time)

(2) Identification and Detailed Evaluation of Investment Opportunities (30% of time)

(3) Negotiation of Terms for a New Investment and Exits (15% of time)

(4) Ongoing Support of Portfolio Companies (30% of time)

(5) Raising Money for VVPA and Portfolio Companies (10% of time)

(6) Managing Projects and Teams (10% of time)

(SF 19.)

The Joanna Goh letter expanded on each of the six job duties and explained how Dr. Lim would be using his PhD to perform the job duties. Ms. Goh stated that Dr. Lim helped formulate VVPA's investment strategy to focus on Deep Tech companies and his PhD training helps him conduct "research and due diligence to validate the investment hypothesis and determine potential financial return." (SF 19.) As part of his second job duty, she explained that he would provide "detailed analysis of the tech and science" of the target company. (SF 19.) He will "prepare a company specific and thematic research report." (SF 19.) As part of his fourth duty, she explained that he "will support the key Biotech portfolio companies" and that "Dr. Lim's expertise in Wnt signaling gained from his PhD and subsequent research work make him uniquely qualified to understand Samumed's [one of the key biotech portfolio companies] science and support commercialization activities." (SF 19.) "Dr. Lim's expertise in skin biology and drug development enable him to authoritatively advise and support Sisaf's commercial efforts." (SF 19.) As part of his fifth job duty, "Dr. Lim will leverage his scientific and applied business training to understand the technology/science/product and synthesize it

5

with other criteria to make a compelling pitch to other investors." (SF 19.) In order to perform any of these job duties, the employee must have a strong scientific educational background. Without such an education, an individual would not be able to assess a target company's science or technology, or how to support such a start-up as it attempts to commercialize the science/technology, or how to explain to other investors why the target company is a potentially valuable investment. A financial analyst or computer systems analyst cannot perform these job duties.

**B.      Government issues a request for evidence and Plaintiff's response**

On July 18, 2018, the Government issued a request for evidence. (SF 20.) The request for evidence asked for documents regarding several aspects of the employer and beneficiary including the worksite in San Francisco and the employer's number of employees and payroll records; however, none of these issues were raised in the Government's denial. (SF 20.) The single issue raised in the request for evidence that was ultimately the basis of the March 12, 2019 denial was whether the biotechnical investment analyst position qualified as a specialty occupation. (SF 20.) Although the initial H-1B filing included over one page of detailed explanation of the six job duties the request for evidence asked for "a detailed statement to explain the beneficiary's proposed duties and responsibilities; indicate the percentage of time devoted to each duty; and state the educational requirements for these duties." (SF 20.) It is important to note that Joanna Goh's original letter provided all of these things already: she provided a detailed job description including explanation of how Dr. Lim would use his science-based PhD to perform the duty and a percentage of time he would spend for each duty. (SF 19.)

The request for evidence also asked for sample work product from Dr. Lim such as reports, presentations, evaluations, designs or blueprints. (SF 20.) The request asked for job postings or advertisements showing a degree requirement is common to the industry in parallel positions among similar organizations. (SF 20.)

1    VVPA provided a response in October 2018. (SF 21.) Because the

2    Government was apparently unsatisfied with Ms. Goh's previous one page

3    statement of the job duties outlined in the initial H-1B filing, VVPA provided a

4    four page statement that provided further detail on each of the six job duties. It is

5    important to note that, despite the Government assertion in its final denial, the six

6    job duties for the biotechnical investment analyst position did not change. In

7    Joanna Goh's second letter dated October 5, 2018 (SF 22), she expanded on the

8    previous description and provided much more detail as to each of the six job duties

9    – his overall process for completing each duty and how his science-based PhD

10   training is necessary to complete each duty. (SF 22.)

11       VVPA also provided sample work product from Dr. Lim including due

12   diligence reports of two target companies, Sisaf and Atomwise. (SF 23,24.)

13       The due diligence report of Sisaf includes a detailed analysis of the

14   "technical and scientific assets" of the company. (SF 23.) Dr. Lim, along with a

15   colleague, performed an on-site and in-person assessment of the Sisaf technology,

16   scientific studies and data and interacted with the company's leaders in order to

17   evaluate whether the scientific claims made by the company seem supported by the

18   data. Dr. Lim summarized the claims in the report and concluded that Sisaf's wide-

19   ranging technology claims seem supported by the data and appear promising. (SF

20   23.)

21       The due diligence report prepared by Dr. Lim for target company Atomwise

22   also makes clear that the Biotechnical Investment Analyst position cannot be

23   performed by someone without an advanced education in biological science. (SF

24   24.) Using his PhD level knowledge of drug delivery platforms, Dr. Lim assessed

25   Atomwise's science and technology and compared it to the state of the art/market

26   and Atomwise's competitors to conclude that the company is a worthwhile

27   investment target. (SF 24.)

28

1    In its denial decision, the Government failed to mention or even
2  acknowledge any of this work product by Dr. Lim. (SF 25.)
3    VVPA also provided twelve job postings for "parallel" positions at similar
4  biotech venture capital firms. Although some of these positions are more junior to
5  Dr. Lim's position, a cursory review of the postings show that even the intern
6  positions require an MD or PhD (biology, biochemistry, genetics, physiology,
7  chemistry) level of education. (SF 26.) Many of these firms title their positions
8  differently, but the job duties are similar to Dr. Lim's biotechnical investment
9  analyst, and all of them require advanced degrees in some form of science
10 depending on the firm's specific investment focus.
11    Northpond Ventures is a "science driven venture capital firm in Bethesda,
12 Maryland" looking for a "Life Sciences Venture Associate/Senior Associate" and a
13 "Life Sciences Venture Principal." (SF 26 at A.R. 305-306.) The postings state that
14 "a PhD in Biochemistry, Molecular Biology or Bioengineering from a leading
15 academic program is a requirement for applicants." (SF 26 at A.R. 305-306.) The
16 job duties are identical to Dr. Lim's duties. (SF 19, SF 26 at A.R. 305-306.)
17    Bay City Capital is "a life sciences investment firm" in San Francisco
18 looking for an "Associate, Venture Capital." (SF 26 at A.R. at 307.) The job duties
19 are identical to Dr. Lim's duties, and the company requires a "MD and/or PhD
20 with strong scientific/clinical knowledge and ability to link science to business."
21 (SF 19, SF 26 at A.R. 307.)  JMP is a San Francisco-based investment bank
22 looking for an "Equity Research Associate – Healthcare & Biotechnology." (SF 26
23 at A.R. 315.) The job duties are very similar to Dr. Lim's duties and the company
24 prefers an "MD or PhD in life science related field." (SF 19, SF 26 at A.R. 315.)
25    UBS is a New York based investment bank looking for an "Equity Research
26 Associate – Biotech & Pharma." (SF 26 at A.R. 317.) The job duties are similar to
27 Dr. Lim's duties and UBS requires an "advanced degree in life sciences (MD, PhD
28 or Masters)." (SF 19, SF 26 at A.R. 317.)

Although the request for evidence specifically asked for job postings from similar positions with industry competitors, and VVPA provided twelve sample job postings, the denial did not mention or even acknowledge this evidence. (SF 25.)

### C. Government denies the H-1B petition on superficial and unsupported grounds

On March 12, 2019, the Government issued a denial decision. (SF 25.) Although the Labor Condition Application filed by VVPA with the Department of Labor clearly states that the specialty occupation being applied for is a Biotechnical Investment Analyst, the Government's denial repeatedly refers to the job title as Biological Scientist – "You filed the petition to secure the beneficiary's services as Biological Scientist." (SF 25.) The USCIS officer clearly confused the job title with the SOC classification from the Occupation Outlook Handbook.

Ultimately, the USCIS officer stated that the job duties provided by VVPA align more with a financial analyst or computer systems analyst and that Dr. Lim does not have the educational background to qualify as either of these professions.(SF 25)  There is no mention in the denial decision of Dr. Lim's work product and no assessment of how the work product resembles that of a financial analyst or computer systems analyst. (SF 25) There is no discussion of the twelve job postings for parallel positions from similar organizations and how all of them require an advanced degree in science or an MD as minimum requirements.(SF 25)

## IV. Argument

Plaintiff moves for summary judgment in this Administrative Procedure Act case, seeking a Court order setting aside the Government's final agency decision pursuant to 5 U.S.C. § 706 and remand this matter to Defendants with instructions that, Defendants approve the Form I-129 Petition.

### A. Combined Summary Judgment and APA Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the pleadings and the evidence demonstrate that "there

9

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In a case involving review of a final agency action under the Administrative Procedures Act, 5 U.S.C. § 706, however, the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record. *See N.C. Fisheries Ass'n v. Gutierrez, 518 F.Supp.2d 62, 79 (D.D.C. 2007).*

*Hospital of University of Pennsylvania v. Sebelius,* 847 F.Supp.2d 125, 133 (D.D.C. 2012).

The APA allows for judicial review of an agency action and provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A). . . .

"In order for an agency decision to be upheld under the arbitrary and capricious standard, a court must find that evidence before the agency provided a rational and ample basis for its decision." *Id.* All that is required is a rational connection between the facts found and the conclusions made by the agency. *Friends of Santa Clara River v. U.S. Army Corps of Engineers*, 887 F.3d 906, 920 (9th Cir. 2018). Accordingly, an agency's decision will not be vacated unless the agency relied on factors Congress did not intend for the agency to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that is counter to the evidence presented, or provided an explanation that is so implausible that it cannot be ascribed to a difference in viewpoints or as the product of the agency's expertise. *Id.* at 921.

Although courts routinely resolve APA challenges to an agency's administrative decision by summary judgment, courts do not follow the traditional analysis to determine whether a genuine issue of material fact exists, because "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). Rather, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* The court's review is limited to the administrative record, to which both sides have stipulated. *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

*Innova Sols., Inc. v. Baran,* 338 F.Supp.3d 1009, 1016 (N.D. Cal. 2018).

### B.   The Government erred as a matter of law when it failed to correctly apply a preponderance of the evidence standard

The Government fundamentally failed to apply a "preponderance of the evidence" standard to its decision denying VVPA the visa. The only evidence in the Administrative Record is evidence submitted by Plaintiffs. The Government did not submit any evidence. Because only VVPA submitted evidence and there was no Government evidence to contradict any of VVPA's evidence, it is difficult to fathom how the Government could have denied VVPA's visa petition without running afoul of the APA. According to the Government's own administrative case law and internal policy guidance[1], the applicable burden of proof should have been

---

[1] The Government's own internal policy guidance states: "The standard of proof applied in most administrative immigration proceedings is the 'preponderance of the evidence' standard. Thus, even if the director has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to believe that the claim is 'probably true' or 'more likely than not,' the applicant or petitioner has satisfied the standard of proof. If the director can articulate a material doubt, it is appropriate for the director to either request additional evidence or, if that doubt leads the director to believe that the claim is probably not true, deny the application or petition."

1   a preponderance of the evidence." *Matter of Chawathe*, 25 I&N 369 (AAO 2010);

2   *Matter of Pazandeh*, 19 I&N 884 (BIA 1989); *Matter of Patel*, 18 I&N 774 (BIA

3   1988); see also 5 U.S.C. § 556(d) ("Except as otherwise provided by statute, the

4   proponent of a rule or order has the burden of proof.") The Government only made

5   cursory references in the introductory portions of the decision, without citing any

6   legal authority, that "based on a preponderance of the evidence, the petition will be

7   denied for the reasons discussed below." (SF 25.)

8       The preponderance of the evidence clearly shows that the biotechnical

9   investment analyst position at VVPA is best categorized as a Biological Scientist,

10  All Other. The job duties as expressed in Joanna Goh's two letters show that only

11  an individual with a strong and advanced science-based education could perform

12  this job. (SF 19, 22.)  The evidence of twelve job postings from similar

13  organizations for parallel positions likewise show that all of the industry

14  competitors require at least a bachelor's degree in some form of science, whether it

15  be Life Sciences, Biochemistry, Molecular Biology or Bioengineering, depending

16  on the specific focus of the venture capital firm or investment bank. (SF 26.) The

17  evidence also included work product from Dr. Lim showing his scientific

18  assessment of two target companies and his explanation of why the company's

19  science and technology showed enough potential to warrant investment. (SF 23,

20  24.) The only evidence that the Government considered was the job duties stated

21  by Joanna Goh, and even there, the government cherry-picked portions of

22  sentences to fit their narrative that Dr. Lim was actually a financial analyst or

23  computer systems analyst. (SF 25) The Government failed to consider Dr. Lim's

24  work product and failed to address the twelve job postings for positions parallel to

25  Dr. Lim's. (SF 25) While there is no doubt that Dr. Lim's Biotechnical Investment

26  Analyst position involves some level of financial and economic assessment of a

27  target company, all of that financial evaluation is done through the lens of whether

28  the company's science is legitimate and backed by scientific data. (SF 23, 24)

While a typical financial analyst might review real estate opportunities, comparable sales and other financial data to evaluate whether an investment opportunity is worthwhile, the biotechnical investment analyst must evaluate the scientific data and technological claims of the company to ascertain whether the company is legitimate or the next Theranos.

In the denial decision, the Government did not explain the preponderance of the evidence standard or analyze how the evidence provided by VVPA allegedly failed to meet that standard. (Sf 25) In fact, the Government ignored most of the evidence tending to show that the biotechnical investment analyst position was a specialty occupation requiring "theoretical and practical application of a body of highly specialized knowledge" and "attainment of a bachelor's degree or higher degree in a specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." The twelve job postings clearly show that similar positions with nearly identical job duties at other industry players normally require an MD or PhD in a specific science, but all of them require at least a bachelor's degree. (SF 26.) Even the intern positions at some require more than a bachelor's degree. (SF 26 at A.R. 308.) The Government failed to explain how this evidence failed the preponderance of evidence standard.

If the Biotechnical Investment Analyst position is truly more akin to a financial analyst or computer systems analyst, and the preponderance of the evidence supports this finding, the Government should have explained how the twelve job postings support their finding. The Government should have explained how the work product from Dr. Lim supports their conclusion. Without considering all the evidence, it is impossible for the Government to argue that "evidence before the agency provided a rational and ample basis for its decision." *Nw. Motorcycle Ass'n v. Dep't of Agriculture,* 18 F.3d 1468, 1471 (9th Cir. 1994) Under the Ninth Circuit's test from *Friends of Santa Clara River*, *supra*, "an agency's decision will not be vacated unless the agency . . . offered an explanation

for its decision that is counter to the evidence presented . . . ." 887 F.3d 906, 921
(9th Cir. 2018). That is the case here. Not only did the Government fail to apply the
preponderance of evidence standard when it ignored large swaths of evidence, the
Government's decision was based on manipulative editing of Joanna's Goh's job
duty statements and was completely "counter to the evidence presented."

### C.   The Government's Repeated Cherry-Picking of Fragments of Sentences In Order To Mischaracterize the Job Duties of the Biotechnical Investment Analyst Position Was Arbitrary and Capricious

Throughout the March 12, 2019 Denial, the Government cherry-picks
sentence fragments, mischaracterizes stated job duties and ignores large swaths of
stated job duties in order to conclude that Dr. Lim's biotechnical investment
analyst position is primarily a finance or computer systems based position.

### i.   The Government Erred When It Ignored Joanna Goh's Overarching Job Description of the Biotechnical Investment Analyst Position

In VVPA's original H-1B filing the company included a letter from Joanna
Goh, VVPA's Legal Counsel and HR Director, stating that the biotechnical
investment analyst's main function was to "source, evaluate, and negotiate
international investments, with particular focus on the Biotechnology, Medical,
and Educational Technology sectors." (SF 19.)

In the March 12, 2019 Denial, the Government ignored the "source" and
"evaluate" aspects and restated the position's primary job duty as "Negotiate
international investments with particular focus on the Biotechnology, Medical, and
Educational Technology sectors." (SF 25.) This is just the first example of the
Government cherry-picking portions of sentences in order to fit their narrative that
the biotechnical investment analyst is better classified as a financial analyst or
computer systems analyst.

The sourcing and evaluating investment opportunities in biotechnology, medical and educational technology sectors accounts for 30% of Dr. Lim's time. (SF 19.) Along with supporting portfolio companies (another 30%), this is the most important job duty he has. (SF 19.) He is expected to seek out biotech investment opportunities with start-up companies and evaluate whether their scientific data and technology are worthwhile and potentially profitable enough for VVPA to pursue investment. In contrast, the negotiating of the actual investment only occupies 15 % of Dr. Lim's time and this job duty is shared with legal counsel and the rest of Vickers Venture Partners. By ignoring the "source" and "evaluate" language, the Government makes it seem like Dr. Lim's role is primarily to negotiate investments which is obviously more of a legal or business-related task. This convenient cherry-picking of language by the Government occurs numerous times throughout the denial decision with the clear intent of trying to fit a narrative that Dr. Lim's biotechnical investment analyst position is not properly classified as a Biological Scientist, All Other.

    ii.    **The Government Erred When It Repeatedly Referred to the Position as a Biological Scientist And Never Once Acknowledged The Job Title As Biotechnical Investment Analyst**

Not once in the denial decision does The Government acknowledge that the job title is Biotechnical Investment Analyst. (SF 25) The Government repeatedly confuses the SOC classification of Biological Scientist, All Other with the job title. It is unclear whether the Government does not understand the difference between the SOC classification and the job title or whether this was done in bad faith.

As a required preliminary step in the H-1B filing process, an employer must file an ETA 9035 labor condition application ("LCA") with the Department of Labor. On the LCA, the employer must state the job title for the desired position. The employer must also classify the position using one of the O*NET SOC

classifications. (SF 16.) Some job titles, many of which have been in existence for many decades, have exact SOC classifications – accountant (SOC 13-2011.01), lawyer (SOC 23-1011.00), and financial analyst (SOC 13.2051.00). However, other job titles, especially positions that are relatively newer, do not have exact matches in the SOC classifications. In these situations, it is not uncommon to choose the SOC classification that most closely fits the job and its duties.

In this case, there is no exact SOC classification for biotechnical investment analyst. As the job duties, Dr. Lim's work product, and the twelve job postings for parallel positions at similar industry players clearly show, the position is primarily science-based. If a venture capital firm or investment bank is going to invest millions of dollars in a start-up biotech or pharmaceutical company, they will need to know if the scientific data and technology are worthwhile and potentially profitable. For this reason, these investment firms must hire scientists to evaluate the target companies. The Biological Scientist, All Other category was correctly chosen as the SOC classification.

The Government's conflation of the Biotechnical Investment Analyst job title with its Biological Scientist, All Other SOC classification either evidences a startling lack of understanding of the labor condition application step in the H-1B process or is a deliberate attempt to mischaracterize the evidence and ignore the job title of Dr. Lim's position at VVPA in order to fit their narrative.

### iii. The Government Erred When it Edited and Ignored VVPA's Job Duties As Stated in the Original Filing

The Government argued in its March 12, 2019 denial that VVPA listed certain job duties for the Biotechnical Investment Analyst position in its original H-1B filing but then changed those duties in its response to the request for evidence. (SF 25 at A.R. 433-434.) This is completely incorrect.

In VVPA's original filing, Joanna Goh offered a detailed description of the six primary job duties of Dr. Lim's biotechnical investment analyst position:

1      (1)    Formulation of Investment Strategy (5% of time)

2      (2)    Identification and Detailed Evaluation of Investment Opportunities

3               (30% of time)

4      (3)    Negotiation of Terms for a New Investment and Exits (15% of time)

5      (4)    Ongoing Support of Portfolio Companies (30% of time)

6      (5)    Raising Money for VVPA and Portfolio Companies (10% of time)

7      (6)    Managing Projects and Teams (10% of time)

8 (SF 19.)

9      In the Government's Request for Further Evidence, it asked for "a detailed

10 statement to explain the beneficiary's proposed duties and responsibilities; indicate

11 the percentage of time devoted to each duty; and state the educational requirements

12 for these duties." (SF 20.) Although VVPA had previously provided all of this

13 information, the Government was asking for more detail; therefore, in response to

14 the Request for Further Evidence, VVPA provided a much more detailed

15 description of the same six job duties.

16      In Joanna Goh's second letter dated October 5, 2018 (SF 22.), she expanded

17 on the previous description and provided much more detail as to each of the six job

18 duties – Dr. Lim's overall process for completing each duty, which computer

19 programs he will use to complete these duties, and how his science-based PhD

20 training is necessary to complete each duty. (SF 22.)

21      In the Government's attempt to support its conclusion that VVPA had

22 changed the job duties of the biotechnical investment analyst position, the denial

23 decision made several misstatements and mischaracterizations of the job duties

24 listed by Joanna Goh in her two letters.

25      The Government stated:

26      You initially described the principal duties of the position as follows:

27
28      • Negotiate international investments with particular focus on the
        Biotechnology, Medical, and Educational Technology sectors;

- Support key Biotech portfolio companies that develop drugs that modulate the Wnt signaling pathway for a variety of different diseases;
- Use propriety (sic) drug delivery platform to formulate and develop new products for skin care and disease treatments;
- Work with operating MDs to help raise funds for VVP to invest.

(SF 25 at A.R. 433.)

This is a careless and sloppy mischaracterization of the duties listed in Joanna Goh's original letter (SF 19.)  The Government's recounting of the job duties completely ignores Dr. Lim's primary duty to source and evaluate potential investment targets in the biotechnology, deep tech and drug development.

As argued above, the Government's first stated duty completely leaves out the "source" and "evaluate" portion of the sentence, and only mentions the duty to "negotiate international investments."

The Government's recounting states that Dr. Lim will "use propriety (sic) drug delivery platform to formulate and develop new products for skin care and disease treatments." Dr. Lim was never to perform this job duty. He was to support one of the portfolio companies, Sisaf and its mission. Sisaf uses a proprietary drug delivery platform to formulate and develop new products for skin care and disease treatments.  "Dr. Lim's expertise in skin biology and drug development enable him to authoritatively advise and support Sisaf's commercial efforts." (SF 19.)

The fourth duty is partially correct but leaves out that "Dr. Lim will leverage his scientific and applied business training to understand the technology/science/product and synthesize it with other criteria to make a compelling pitch to other investors." (SF 22.)

The Government denial failed to acknowledge or possibly understand Dr. Lim's primary job duties.  The denial failed to acknowledge that Dr. Lim will conduct "research and due diligence to validate the investment hypothesis" as it pertains to biotech, drug development and deep tech companies.  (SF19.)  It failed

18

to acknowledge that Dr. Lim would provide "detailed analysis of the tech and science" of the targeted invest company. (SF 19)  It failed to acknowledge that Dr. Lim would "prepare a company specific and thematic research report" to present to the invest committee.  (SF 19.) The denial failed to acknowledge that Dr. Lim would "leverage his scientific and applied business training to understand the technology/science/product and synthesize it with other criteria to make a compelling pitch to other investors."  For all these reasons, the Government's denial must be regarded as offering an explanation for its decision that is counter to the evidence presented.

> iv.    **The Government Erred When It Edited and Manipulated VVPA's Stated Job Duties from Joanna Goh's Second Letter In Order to Conclude That VVPA Had Described a Financial Analyst or Computer Systems Analyst Rather than a Biotechnical Investment Analyst**

The Government's recounting of the job duties as stated in Joanna Goh's second letter is not just sloppy, it is dishonest and manipulative. The Government chopped apart and edited sentences from Joanna Goh's second letter in order to purge all references to science. It also ignored entire sentences that fully explained how the Biotechnical Investment Analyst position requires an advanced understanding of science. Here is a list of the Government's recounted job duties along with a comparison to what was stated in Joanna Goh's second letter:

**"Analyze data spans technology and markets using engineering diagrams and financial data;" (SF 25 at A.R. 433)**

A review of the cover letter for the response to the request for further evidence shows quite clearly how the government edited multiple sentences from

Joanna Goh's letter.[2] (SF 21 at A.R. 86.) The italics show the cherry-picked editing of the USCIS officer. The original sentence read "These are the same methods that Dr. Lim has also been using to *analyses* (sic) the state of the art in his scientific research endeavors. The *data spans technology and markets*, and may include biological experimental data, clinical trial data, *engineering diagrams, and financial data*." (SF 21 at A.R. 86.) (Emphasis added to show Government's editing.) This clearly shows that all science-related language was removed when the Government recounted the supposed job duty.

### **"Interpret and Evaluate Financial Data;" (SF 25 at A.R. 433)**

The italics show once again that the USCIS officer cherry-picked language in a manipulative way. The original sentence stated "In order to understand such technically complex data, Dr. Lim first uses his scientific training and content knowledge to *interpret* the data, *and* subsequently his financial training to *evaluate the financial data*." (SF 21 at A.R. 86.) A review of the complete statement of job duty one shows that Dr. Lim is repeatedly using his science-based Phd to perform this duty.

### **"Use financial, technical and commercial training to do a detailed evaluation of the commercial and technical competitive landscape, and present this information in a graphic format;" (SF 25 at A.R. 434)**

Here, the Government blatantly added the word "financial" to fit its narrative that the position is more akin to a financial analyst. The original sentence reads "Dr. Lim uses both his *technical and commercial training to do a detailed evaluation of the commercial and technical competitive landscape . . . .*" (SF 21 at A.R. 87.)

---

[2] The job duties as listed in the cover letter were taken verbatim from Joanna Goh's second letter (AR 404-10); however, it is clear from the USCIS officer's markings that he/she was working from the cover letter.

**"Pre-identify nascent technical trends and promising technologies and teams in order to select which companies to speak with;" (SF 25 at A.R. 433)**

The original sentence stated Dr. Lim's "scientific training and content knowledge allows him to *pre-identify nascent technical trends and promising technologies and teams, in order to select which companies to speak with.* His credentials as an accomplished scientist and insightful investor are essential for him to effectively and credibly interact with company founders who are highly technically qualified." (SF 21 at A.R. 86.) Here, VVPA did exactly what the request for evidence asked of them. They set forth the job duty and tied it directly to how his educational background would be used to perform it. As a scientist, Dr. Lim would be able to discuss technical trends, technologies, and scientific data at a very high level with the founders of biotech start-ups. Once again, the Government edited Joanna Goh's statements in a way to purge all references to science and Dr. Lim's Phd.

**"Perform background literature searches and note observations in note-taking software;" (SF 25 at A.R. 434)**

This is another example of the Government ignoring VVPA's explanation of how Dr. Lim will use his PhD in science to perform the job duty. The original sentence stated "Dr. Lim will also perform background literature searches in academic and industry databases using internet browser software, and will note these observations . . . using . . . note-taking software. The ability to understand and evaluate the data and background literature requires Dr. Lim's PhD scientific training and content knowledge." (SF 21 at A.R. 87.) The full statement makes clear that Dr. Lim is not just reviewing easily digested financial information. He is assessing the state of the art by reviewing industry competitors and what other scientists in this space have discovered.

**v. The Government Erred When It Ignored Very Obvious Science-Based Job Duties and Concluded that the Biotechnical**

1    **Investment Analyst Position Was More Akin to a Financial**
2    **Analyst or Computer Systems Analyst**
3         In the March 12, 2019 denial, the Government stated several job duties
4    pulled verbatim from Joanna Goh's second letter; however, the Government
5    completely ignores them or understates the need for an advanced science-based
6    education in order to perform them.
7         **"Evaluate the technical aspects of companies' technologies and assess**
8    **the scientific or engineering data provided and run the data through statistical**
9    **software;" (SF 25 at A.R. 434)**
10        This quote was pulled almost verbatim from Joanna Goh's letter. It is
11   striking however that the Government would acknowledge this as a job duty and
12   still regard the position as akin to a financial analyst or computer systems analyst.
13   This duty cannot be performed by either a financial or computer systems analyst.
14   This job duty, especially considering that we are talking about biotech companies
15   or drug development companies, requires the individual evaluating the technical
16   aspects and scientific data to have a firm and strong understanding of the science
17   involved. A financial analyst, while well-suited to assess a real estate portfolio, is
18   not qualified to assess the science that is the foundation of these start-up biotech
19   companies, especially considering the venture capital firm is considering multi-
20   million dollar investments.
21        **"Evaluate the patent protection of technology or product conducted in**
22   **patent databases" (SF 25 at A.R. 434)**
23        The Government ignored the next sentence "Most of these patents are highly
24   technical in nature, and Dr. Lim draws on his scientific training and content
25   knowledge, as well as his commercial experience to evaluate these patents and
26   consider their defensibility in the context of the competitive landscape and
27   historical practices in the biotech and tech markets." (SF 21 at A.R. 88.) A
28   financial analyst or computer systems analyst could not possibly perform the duty

1   of analyzing patents and assessing their defensibility. One must have a science-

2   based education to complete this highly technical task.  In order to practice as a

3   patent attorney and litigate intellectual property disputes, most IP law firms require

4   that an attorney have a Bachelor's Degree in Science.  If the biotechnical

5   investment analyst is assessing the defensibility of such patents, why would the

6   Government expect that a Financial Analyst or Computer Systems Analyst would

7   be able to perform this task?

8        **"Asses (sic) risks associated with a company's business plan, including a**

9   **detailed analysis of the tech and science, company's product development and**

10   **financing plans" (SF 25 at A.R. 434.)**

11        The full sentence stated that Dr. Lim was expected to prepare a

12   "comprehensive Investment Memo" on the potential investment target company

13   and pointed out that examples of this work product were attached. (SF 21 at A.R.

14   88.) This duty goes to the heart of what Dr. Lim is being asked to do as a

15   Biotechnical Investment Analyst. A review of his work product shows clearly that

16   the preparer of the comprehensive investment memo must have a firm

17   understanding of the science and technology upon which the potential investment

18   target company is founded. (SF 23,24.)

19        **"Monitor the technical and commercial state of the art using industry**

20   **databases and commercial analyses conducted using quantitative models" (SF**

21   **25 at A.R. 434.)**

22        When considering that the industry being analyzed is biotechnical, drug

23   development and other highly technical scientific fields, the individual being asked

24   to monitor the "technical and commercial state of the art" must have a firm

25   understanding of the science involved. This is a highly technical job duty and Dr.

26   Lim uses his PhD in Developmental Biology to constantly stay up to date on new

27   developments by industry competitors.

28

**D.     The Government's Failure to Consider All the Evidence and Manipulative Misrepresentation of The Job Duties Shows that Defendants "Offered an Explanation for Its Decision that Is Counter to the Evidence."**

"In order for an agency decision to be upheld under the arbitrary and capricious standard, a court must find that evidence before the agency provided a rational and ample basis for its decision." *Nw. Motorcycle Ass'n v. Dep't of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). If the Government "offered an explanation for its decision that is counter to the evidence presented," the District Court should vacate the decision. *Friends of Santa Clara Rive v. U.S. Army Corps of Engineers*, 887 F.3d 906, 920 (9th Cir. 2018). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.*" Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985).

In this case, the Government completely ignored vast amounts of evidence tending to show that Dr. Lim's Biotechnical Investment Analyst position is a specialty occupation that requires a theoretical and practical application of a body of highly specialized knowledge and the attainment of a bachelor's degree in a specific specialty is a minimum for entry into the occupation.

Several examples of Dr. Lim's work product were provided to USCIS in response to their request for further evidence. The comprehensive investment memos clearly show that the evaluation performed by Dr. Lim was scientific in nature. (SF 23, 24.)   He is explaining why the scientific data for the company is promising and should be pursued by the investment committee, but the Government failed to consider this evidence.

The twelve job postings for parallel positions at industry competitors clearly showed that other venture capital firms and investment banks operating in the biotech, life sciences and drug development industry normally require PhD level

24

1  scientists to perform the job of sourcing and evaluating potential investment

2  opportunities, but the Government failed to consider this evidence. (SF 26.)

3      The only evidence the Government considered was Joanna Goh's two letters

4  stating the job duties of the biotechnical investment analyst, but even here, the

5  Government used sloppy and manipulative editing to mischaracterize Ms. Goh's

6  statements. The government ignored and purged references to science and how Dr.

7  Lim must use his scientific training to perform his job duties.

8      Ultimately, the Government concludes that the job duties are more akin to a

9  financial analyst or computer systems analyst. Then, having created this alternate

10  universe, the Government goes on to argue that Dr. Lim does not have the

11  educational background to be a financial analyst or computer systems analyst. The

12  Government's conclusion and explanation is counter to the evidence presented.

13      Under the Ninth Circuit's standard of review for an APA case, the

14  Government's decision must be classified as arbitrary, capricious, and an abuse of

15  discretion.

16  **IV.    CONCLUSION**

17      Based on the foregoing, Plaintiff VVP Advisors, Inc. respectfully ask this

18  Court to (a) grant its motion for summary judgment: (b) set aside the

19  Government's March 12, 2019 final agency decision as not in compliance with the

20  APA; and (c) order the Government to issue Dr. Lim the H-1B visa Plaintiff

21  applied for back in April 2018 within ten days of the Court's order.

22

23  DATED:   November 13, 2019          NELSON & NUÑEZ, P.C,

24

25

26                                     by:_____

27                                     JAY I. NUÑEZ, Attorney for PLAINTIFF,

28                                     VVP Advisors, Inc.